IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| TONI DUNCAN, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV277 |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTY OF DAKOTA, NEBRASKA, | ) | MEMORANDUM AND ORDER |
| JAMES L. WAGNER, Dakota County | ) | |
| Sheriff, in his official capacity and | ) | |
| personally, AND RODNEY HERRON, in | ) | |
| his official capacity and personally, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motions for summary judgment filed by defendants James L. Wagner (hereinafter, "Sheriff Wagner"), Rodney Herron ("Deputy Sheriff Herron"), and County of Dakota, Nebraska (sometimes, collectively, "the county defendants"), Filing No. 49, and by Deputy Sheriff Herron and Sheriff Wagner on claims asserted against them in their individual capacities, Filing No. 52 and Filing No. 55. This is an action for discrimination in employment brought under 42 U.S.C. § 1983. The claim remaining in this case is a claim for "hostile environment" gender-based discrimination or sexual harassment.[1]

The county defendants argue that they are entitled to qualified immunity if Wagner and Herron are entitled to qualified immunity on individual-capacity claims. The county

---

[1] This court previously found that the plaintiff failed to state a claim for race discrimination or for constructive discharge and dismissed both of those claims. See Filing No. 30. Further, the court found that the plaintiff's "claim" for punitive damages, although labeled a freestanding claim, was actually an element of damages. Id.

defendants also assert the *Ellerth-Faragher* defense,[2] claiming that the county had an effective anti-harassment policy in place and the plaintiff failed to utilize it. Herron and Wagner argue they are entitled to qualified immunity and further assert that the undisputed evidence establishes that the conduct at issue was neither severe nor pervasive so as to amount to actionable harassment. In response to defendant Wagner's motion, the plaintiff concedes that the claim against Sheriff Wagner in his individual capacity is subject to dismissal, but asserts there are genuine issues of fact that preclude summary judgment with respect to the other claims. See Filing No. 69, Response; Filing No. 70, Brief.

**I. Background**

Duncan asserts that her supervisor, defendant Rodney Herron, had numerous sexual relationships with other employees, resulting in favorable treatment of those employees, to the detriment of Duncan.[3] Filing No. 1, Complaint. She asserts that defendant Herron created an "openly sexually charged environment." *Id.* She further alleges that Herron harassed and intimidated employees who were not in his favor by ordering deputies to follow these employees and "set them up for arrest." *Id.* at 4. Also, she alleges that Dakota County was on notice of the behavior, took no steps to correct it, and covered it up. *Id.* at 5-6.

---

[2]See *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998) and *Faragher v. City of Boca Raton,* 524 U.S. 775, 778 (1998).

[3]There are a total of four related cases pending in this district that involve the working environment at Dakota County's correctional facility. See *Williams v.. County of Dakota, et al.*, Case No. 8:09CV201; *Crutcher-Sanchez v. County of Dakota, et al.*, Case No. 8:09CV288, and *Criss, et al. v. Dakota County Bd. of Comm'rs*, Case No. 8:09CV387. Recently, the magistrate Judge recommended denial of a motion to recuse in the *Criss* case. See *Criss, et al. v. Dakota County Bd. Comm'rs*, Case No. 8:09CV387, Filing No. 91, motion to recuse; Filing No. 123, Findings and Recommendation.

In support of and opposition to the defendants' motions, the parties have submitted extensive deposition testimony and the affidavits of several other female employees of the Dakota County Jail. *See* Filing No. 73, Index of Evid., Ex. A, Deposition of Alana Crutcher-Sanchez (f/k/a Alana Smith) ("Crutcher-Sanchez Dep."); Ex. B., Deposition of Charvette Williams ("Williams Dep."); Ex. C, Affidavit of Heather Shelby (f/k/a Heather Skow) ("Shelby Aff."); Ex. D, Affidavit of Betty O'Neill ("O'Neill Aff."); and Ex. E, Affidavit of Diana Moctezuma ("Moctezuma Aff."); Filing No. 50 & Filing No. 53, Indices of Evid., Ex. 1, Exs. A & B, Deposition of plaintiff Toni Marie Duncan, Vols. I and II ("Duncan Dep."); Ex. D, Deposition of James L. Wagner ("Wagner Dep."); Ex. E, Deposition of Rodney Herron ("Herron Dep."). Duncan testified that rumors of sexual activity permeated the job. Ex. B, Duncan Dep. at 394. She further stated that on her first day of employment, Deputy Sheriff Herron warned her that the "sheriff would be making advances on her." *Id.* To Duncan's knowledge, Herron had a child with one woman who had worked at the jail and another had become pregnant. *Id.* at 199-200. She testified she was aware that Crutcher-Sanchez had a sexual relationship with Deputy Sheriff Herron and was terminated after ending the relationship. *Id.* at 138. Further, she stated she was aware that Moctezuma had a relationship with defendant Herron and was promoted. *Id.* at 214-15. She believed promotions were based on something other than merit. *Id.* She also testified that pornography and sexual jokes were pervasive in the workplace, preferential treatment was given to women who engaged in sexual activity with superiors. *Id.* at 202, 434, 453. Further, she testified that she was adversely affected by the environment in that she believed she was qualified for a promotion but did not apply because other officers would

have suspected that she "would have sexual activity with [her] superiors." *Id.* at 291. She sought medical attention for stress. *Id.* at 383-86.

In her affidavit, former Dakota County Jail employee Heather Shelby stated that defendant Herron attempted to kiss her and touched her inappropriately on multiple occasions. Filing No. 71. Ex. 3, Shelby Aff. at 1. She further stated that Deputy Sheriff Herron promised her an easier work schedule in exchange for "doing a strip tease for him or [posing] for him at work." *Id.* at 2. Shelby further states in the affidavit that "[t]he work environment was sexually charged" and that "[p]ornography was present on computers at work" and sexual jokes were distributed via email at the jail during the time she worked there. *Id.* at 2. She also states that she was told she would lose her job if she testified truthfully at an investigation into improprieties at the jail. *Id.* at 3.

The affidavit of Betty O'Neill shows that there were numerous allegations that Sheriff Wagner and Chief Deputy Herron were sexually harassing female employees. *Id.*, Ex. 4 at 1. She participated in the investigation and, based on her observations, believes "Wagner and Herron sexually harassed female employees at the Dakota County Jail and that all employees were subject to a sexually charged and hostile work environment created by Wagner and Herron and covered up by other Dakota County Commissioners and Dakota County Attorney." *Id.* at 2.

The affidavit of Diane Moctezuma shows that defendant Herron had an ongoing relationship with Alana Crutcher-Sanchez at the time Moctezuma was first employed, and that Moctezuma began a relationship with him shortly thereafter. *Id.,* Ex. 5 at 2. Defendant Herron told Moctezuma that he was trying to have Alana arrested for a DUI so he could fire

her. *Id.* Herron also asked Moctezuma to lie to investigators. *Id.* at 3. She stated that "Herron made it clear that [she] would receive benefits if [she] dated him and that he would retaliate against [her] in some way if [she] did not comply. *Id.* at 3.

The testimony of defendant Herron is at odds with much evidence submitted by the plaintiff, although he admits having sex with Diana Moctezuma and promoting her within two weeks after she was hired. *See* Filing No. 50, Ex. E., Herron Dep. at 38, 76. He denies making any advances on Shelby. *Id.* at 34, 42-43. He also admits to a sexual relationship with Charvette Williams, but testified that she initiated it. *Id.* at 56. Also, he admits having a sexual relationship with a nurse at the jail and to having a relationship, and a child, with another Dakota County employee. *Id.* at 56-57, 60-61. Further, he admits that texts and e-mails of jokes were sent on county computers. *Id.* at 74. He denies, however, that the women received favorable treatment and also denies that he ever pressured any individual to have a relationship with him. *Id.* at 49, 51-52, 93-94, 111.

## II. Discussion

### A. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e)(2); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show there is sufficient evidence to support a jury verdict in his or her favor. *Id.* "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Although facts are viewed in the light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999).

There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging

discrimination, merits a trial. *Torgerson v. City of Rochester*, No. 09-1131, slip op. at 14 (8th Cir. June 1, 2011) (en banc) (quoting *Fercello v. County of Ramsey*, 612 F.3d 1069, 1077 (8th Cir. 2010). Nevertheless, "[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). The court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* at 248. To be material, a fact "must affect the outcome of the lawsuit under governing law." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's favor]." *Id.* at 255. "If reasonable minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250. In a discrimination case, when the record on summary judgment is fully developed, the "court need only decide whether, on the record as a whole, there is a genuine issue for trial on the ultimate question of discrimination *vel non*." *Torgerson*, slip op. at 32 (Colloton, J., concurring).

Duncan's "right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment." *Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007); *Ottman v. City of Independence*, 341 F.3d 751, 756 (8th Cir. 2003) ("intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment"). Equal protection claims may be asserted under 42 U.S.C. § 1983. *See, e.g., Mercer v. City of Cedar Rapids,* 308 F.3d 840, 844 (8th Cir. 2002). Discrimination based on gender that creates a hostile or abusive working environment also violates § 1983. *Weger v. City of*

7

*Ladue,* 500 F.3d 710, 171 (8th Cir. 2007) (hostile work environment claims under Title VII and § 1983 are subject to the same analysis).

To establish a prima facie hostile work environment claim for harassment by a supervisor, a plaintiff must prove: (1) that she was a member of a protected group; (2) that unwelcome harassment occurred; (3) a causal nexus between the harassment and her membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of employment. *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008).

Title VII "prohibits both *quid pro quo* harassment, where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir.2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Sexual harassment is *quid pro quo* if a tangible employment action follows the employee's refusals to submit to a supervisor's sexual demands. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998). A plaintiff in that situation need not prove that the offensive conduct is severe or pervasive because any carried-out threat is itself deemed an actionable change in the terms or conditions of employment. *Id.* at 753-54; *Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1027 (8th Cir. 2004). Thus, to avoid summary judgment on a *quid pro quo* harassment claim, the plaintiff must present evidence capable of proving that "submission to unwelcome advances was an express or

8

implied condition for receiving job benefits or [that] refusal to submit resulted in a tangible job detriment." *Newton v. Cadwell Labs.,* 156 F.3d 880, 882 (8th Cir. 1998).

"Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006) (quoting *Harris,* 510 U.S. at 21). "[The plaintiff] must clear a high threshold to demonstrate actionable harm, for 'complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' obtain no remedy." *Id.* at 845-46 (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998)). "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 846 (quoting *Faragher,* 524 U.S. at 787). "To be actionable, the conduct complained of must be extreme in nature and not merely rude or unpleasant." *Id.* "Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* (quoting *Tuggle v. Mangan,* 348 F.3d 714, 720 (8th Cir. 2003). "Such standards are demanding, for 'Title VII does not prohibit all verbal or physical harassment' and is not 'a general civility code for the American workplace.'" *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). "In determining whether a work environment was sufficiently hostile or abusive, [courts] examine the totality of the circumstances, including whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive

9

utterance; and whether it unreasonably interfered with the employee's work performance." *Id*.

In order for a person to claim sexual favoritism, there must be evidence of either *quid pro quo* or hostile environment sexual harassment. See *Tenge*, 446 F.3d at 908 (noting that the EEOC "was careful to distinguish cases of favoritism to an employee actually involved in a romantic relationship with a supervisor from favoritism based on coerced sexual conduct, which amounts to *quid pro quo* sexual harassment, and from widespread sexual favoritism in the workplace, which may establish a hostile work environment claim" and citing EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism, EEOC Notice No. 915-048 (Feb. 15, 1990)). A single allegation cannot constitute widespread sexual favoritism. *McGinnis v. Union Pacific R.R.*, 496 F.3d 868, 874 (8th Cir. 2007).

Government entities are not liable under section 1983 for an employee's actions under a theory of respondeat superior, but the county may be liable if the plaintiff can prove an official policy or a widespread custom that violated the law and caused the plaintiff's injury. See *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998); *Polacco v. Curators of University of Missouri*, 37 F.3d 366, 369 (8th Cir. 1994) (stating that an employer may be held liable even if its individual agents are not). Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate

decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 668, 690-91 (1978).

Under section 1983, to establish liability against a defendant in his individual capacity, because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Parrish v. Ball*, 594 F.3d 993, 1000 (8th Cir. 2010); *Ashcroft v. Iqbal,* 129 S. Ct. at 1948. "Thus, 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Parrish,* 594 F.3d at 1001 (quoting *Iqbal*, 129 S. Ct. at 1949).  A supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.  *Id.*; *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) (stating that the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see).

The *Ellerth/Faragher* affirmative defense protects employers in harassment cases in which an employee fails to stop the harassment by using the employer's effective anti-harassment policy. *McCurdy v. Arkansas State Police*, 375 F.3d 762, 772 (8th Cir. 2004). The defense, which is available only when no tangible employment action been taken, "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective

11

opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher v. City of Boca Raton,* 524 U.S. 775, 778 (1998).

       B.  Analysis

Viewing the evidence in the light most favorable to the plaintiff, the court finds the county defendants and defendant Herron in his individual capacity are not entitled to summary judgment. The court has reviewed the evidence submitted by the parties and finds that a reasonable juror could draw an inference of discrimination from the defendant's actions, if the testimony of the plaintiff and other witnesses were credited. This determination is a fact issue that should be submitted to a jury.

The evidence indicates that defendant Herron has a long history of conduct with employees that could be characterized as harassment. There is evidence from which a jury could infer that other employees received preferential treatment for engaging in sexual relationships with defendant Herron. The evidence also supports the inference that the plaintiff was adversely affected by the favoritism. Importantly, there is evidence from which a jury could find *quid pro quo* sexual harassment and also evidence of unwelcome advances and harassing conduct based on gender. Whether the conduct rose to the level of severe and pervasive conduct that affects a term or condition of employment is for the jury to decide. The evidence supports the plaintiffs' assertion that the actions were taken either by policy-makers or pursuant to an official policy or custom and practice of the County. The court finds there are genuine issues of material fact with respect to the severity and pervasiveness of the conduct. Resolution of these issues will involve assessments of credibility and present questions of fact for the jury.

The court also finds the defendants' reliance on the *Ellerth/Faragher* defense is misplaced because the evidence does not establish that the county had an effective anti-harassment policy in place. Further, for the reasons stated in this court's Memorandum and Order on the defendant's motion to dismiss, the court finds the defendants are not entitled to summary judgment on the basis of qualified immunity. Accordingly, the court finds the defendants' motions for summary judgment should be denied.

IT IS ORDERED:

1. The county defendants' motion for summary judgment (Filing No. 49) is denied.

2. Defendant Rodney Herron's motion for summary judgment (Filing No. 52) is denied.

3. Defendant James L. Wagner's motion for summary judgment (Filing No. 55) is granted.

4. The plaintiff's claims against James L. Wagner in his individual capacity are hereby dismissed.

DATED this 21st day of June, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.